# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LINDA WILLIAMS,

    *Plaintiff,*

v.

AEROFLEX WICHITA, INC. and LORI CROMWELL,

    *Defendants.*

Case No. 6:18-cv-01252

## MEMORANDUM AND ORDER

The Court is presented with Defendants Aeroflex Wichita, Inc. ("Aeroflex") and Lori Cromwell's Partial Motion for Judgment on the Pleadings for Counts 4, 6, 7, and 8 of Plaintiff Linda Williams' complaint (Doc. 17). For the reasons that follow, the motion is granted.

### I.    Factual and Procedural Background[1]

In 1999, Aeroflex hired Williams as a file clerk. In 2000, Aeroflex transferred her to the position of customer service representative, where she was under Cromwell's supervision. Williams alleges that, over the next 17 years, Cromwell repeatedly subjected her to racially targeted harassment, abuse, and general humiliation. This included racist comments about her

---

[1] The facts come from Williams' complaint and are taken as true for the purposes of this ruling.

hairstyle in front of her peers, derogatory remarks about her intelligence, and an incident where Cromwell threw a stack of papers on the floor and ordered Williams to pick them up. Williams further alleges that Cromwell enforced several company policies specifically against her, as when Cromwell repeatedly sent her home for violating the dress code while ignoring white employees who wore similar clothing. In addition to the dress code discrimination, Williams alleges that Cromwell denied her time off more often than her coworkers, monitored her work far more closely than that of the other employees, and falsely informed her that her coworkers had complained she was wasting too much time on lunch, when they had said no such thing. Williams also claims that Cromwell warned her, "I want you to know I am watching you," a threat in retaliation for her complaints. Even after Aeroflex gave her a new supervisor in 2017, Williams alleges that Cromwell has continued to harass her.

Williams filed this suit against Aeroflex and Cromwell for violations of Title VII (Counts 1-3), Cromwell for intentional infliction of emotional distress (Count 4) and negligent infliction of emotional distress (Count 5), and Aeroflex for negligent retention/hiring, training, and supervision (Counts 6-8). The defendants now move for judgment on the pleadings on Counts 4, 6, 7, and 8 under Rule 12(c), arguing that these claims fail as a matter of law.

## II.     Legal Standard

The standard for evaluating judgment on the pleadings is the same as that for a motion under Rule 12(b)(6).[2] Under Rule 12(b)(6), a defendant may move for dismissal when the plaintiff has failed to state a claim upon which relief can be granted.[3] Upon such motion, the

---

[2] *Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012).

[3] Fed. R. Civ. P. 12(b)(6).

court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[4] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[5] The court is required to accept the factual allegations in the complaint as true, but is free to reject legal conclusions.[6] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims and the grounds on which the claim rests.[7]

### III. Analysis

**A. Negligent Retention, Supervision, and Training**

Williams claims that Aeroflex was negligent in retaining and failing to train and supervise Cromwell, which caused her emotional and physical harm. Aeroflex moves to dismiss, arguing that Williams' status as an employee prevents her from recovering for negligent retention, supervision, and training.

Every employer has a duty to "hire and retain only safe and competent employees."[8] To establish a breach of this duty (negligent retention), the plaintiff must show that the employer had reason to believe that the employee's dangerous "quality or propensity" created an undue

---

[4] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10 Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *McKenzie v. Office Depot Store*, Case No. 12-2373, 2012 WL 586930, at *1 (D. Kan. 2012).

[7] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10 Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[8] *Plains Res., Inc. v. Gable*, 235 Kan. 580, 590, 682 P.2d 653, 662 (1984).

risk to others and kept the employee on anyway.[9] The harm sued for must have been within such risk.[10]

Negligent supervision and training are in the same vein as negligent retention. Negligent supervision requires that the employer fail to supervise their employee while having "reason to believe that the employment of the employee would result in an undue risk of harm to others."[11] Similarly, an employer may also be responsible for injury caused by the employee that could have been prevented with better training.[12]

An employee who has been injured by a coworker cannot recover against her employer for negligent retention, supervision or training; recovery is generally limited to third parties.[13] This is based on the principle that "an employer is not responsible for its employee's unauthorized acts committed outside the scope of the employee's duties," and the employee's duties do not include the way she treats other employees.[14] For the same reason, harassment by a coworker will not constitute an actionable injury for the purposes of negligent supervision or training.[15]

---

[9] *Schmidt v. HTG, Inc.*, 265 Kan. 372, Syl. ¶ 10 (1998).

[10] *Id.*

[11] *Wayman v. Accor N. Am. Inc.*, 45 Kan. App. 2d 526, 251 P.3d 640, 650 (2011).

[12] *Estate of Belden v. Brown Cty.*, 46 Kan. App. 2d 247, 261 P.3d 943, 968 (2011).

[13] *Forbes v. Kinder Morgan, Inc.*, 172 F. Supp. 3d 1182, 1201 (D. Kan. 2016) (citing *Beam v. Concord Hosp., Inc.*, 920 F. Supp. 1165, 1165 (D. Kan. 1996)); *Wood v. City of Topeka*, 90 F. Supp. 2d 1173, 1195 (D. Kan. 2000) ("Kansas law does not authorize claims for negligent supervision and retention in typical employment-related litigation.").

[14] *Beam*, 920 F. Supp. at 1168.

[15] *See Fiscus v. Triumph Grp. Ops., Inc.*, 24 F. Supp. 2d 1229, 1242-43 (D. Kan. 1998); *Lawyer v. Eck & Eck Mach. Co.*, 197 F. Supp. 2d 1267, 1277 (D. Kan. 2002).

While the conduct she alleges is reprehensible, the fact remains that Ms. Williams is an employee and thus precluded from recovery. Williams attempts to distinguish her case from the general rule by noting that Cromwell was no ordinary worker, but a supervisor in a position of power over her. However, she cites no authority showing why this distinction is important. Indeed, the complained-of coworker was a supervisor in many of the cases holding that an employee cannot recover for negligent retention, supervision, or training.[16]

For example, in *Wood v. City of Topeka*,[17] the court granted summary judgment to the employer on the employee's claim that the employer was liable for the negligent retention and supervision of a supervisor who discriminated against him based on his age. In *Fiscus v. Triumph Group Operations*,[18] the plaintiffs argued their employer negligently trained and supervised its employee with respect to sexual harassment. The court refused to recognize the employees' claims, because that would be an overexpansion of the law: "this cause of action, if recognized, 'would necessarily arise any time a middle level supervisor engaged in discriminatory conduct. We think it unlikely that the Kansas courts would adopt a liability rule with such broad implications.'"[19] It is clear that Kansas law precludes recovery by an employee for the employer's negligent training, supervision, or retention. Aeroflex is thus entitled to dismissal on Counts 6-8.

---

[16] *See, e.g., Wood*, 90 F. Supp. 2d at 1195; *Lawyer*, 197 F. Supp. 2d at 1277; *Fiscus*, 24 F. Supp. 2d at 1243.

[17] 90 F. Supp. 2d. 1173 (D. Kan. 2000).

[18] 24 F. Supp. 2d. 1229 (D. Kan. 1998).

[19] *Fiscus*, 24 F. Supp. 2d at 1243 (quoting *Polson v. Davis*, 895 F.2d 705, 710 (10th Cir. 1990)).

## B.  Intentional Infliction of Emotional Distress

Williams also claims that Cromwell has committed the tort of intentional infliction of emotional distress against her.  Cromwell responds that the allegations are not extreme and outrageous enough to support a finding of intentional infliction of emotional distress as a matter of law, and thus judgment should be granted in her favor.

Intentional infliction of emotional distress requires four elements: "(1) The conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe."[20]

To be "extreme and outrageous," a defendant's actions must be "atrocious and utterly intolerable in a civilized society."[21]  Harassment, insults, and general humiliation will not suffice.[22]  The plaintiff in *Blackwell v. Harris Chemical*[23] alleged that the defendant, over four years, forced her to perform "busy work," assigned her a nonworking computer, routinely berated and screamed at her, placed her on probation under false pretenses, and fired her on pretextual grounds after learning of her impending lawsuit.  The court rejected the plaintiff's claim because while "defendants' actions were arguably unprofessional and inconsiderate . . . most of defendants' behavior consisted of daily business decisions which employers routinely

---

[20] *Roberts v. Saylor*, 230 Kan. 289, 637 P.2d 1175, 1179 (1981).

[21] *Taiwo v. Vu*, 249 Kan. 585, 592 (1991).

[22] *Blackwell v. Harris Chemical N. Am., Inc.*, 11 F. Supp. 2d 1302, 1309 (D. Kan. 1998); *Serda v. Mellon Mortg. Co.*, 1997 WL 534458, at *2-4 (D. Kan. 1997).

[23] 11 F. Supp. 2d.

make."[24] In *Serda v. Mellon Mortgage Co.*[25], the plaintiff alleged that her employer required her to work overtime, routinely made fun of her, excluded her from meetings, assigned her the retired workers' duties instead of replacing the workers, threw a stack of checks at her to finish, refused to transfer her, and removed her telephone privileges. The court dismissed her intentional infliction of emotional distress claim, finding that the employer's actions were not extreme or outrageous.[26] They were instead merely "rude, abrasive, and unprofessional."[27]

Cromwell argues that the present claim should likewise be dismissed because the allegations are "similar to, or in many cases, less severe than, the conduct alleged" in *Blackwell* and *Serda*. Indeed, the facts are strikingly similar: in each case was a pattern of humiliation, harassment, and denial of otherwise routine work privileges. The incident in *Serda* where the defendant threw a stack of checks at the plaintiff closely mirrors Williams' allegation that Cromwell threw a stack of papers on the floor and told her to pick them up. The probation and firing in *Blackwell* go even further than the acts here, given that Williams was not fired but transferred to another supervisor. If the plaintiffs in *Blackwell* and *Serda* could not state a claim for intentional infliction of emotional distress, Williams cannot either.

Williams makes no attempt to distinguish these cases. Nevertheless, one difference is present: allegations of racism here which were not asserted in *Blackwell* or *Serda*. However, courts will only find racial harassment to be sufficiently outrageous when it is far more egregious

---

[24] *Blackwell*, 11 F. Supp. 2d at 1309.

[25] 1997 WL 534458.

[26] *Serda*, 1997 WL 534458 at *2.

[27] *Id.*

than the allegations contained here. For example, in *Watson v. City of Topeka*[28], an employee alleged that his company had mistreated him based on his race, which included the use of multiple racial slurs (including the term "porch monkey," though not directed against him personally), the deputy director snatching papers from his hands and tearing them up, along with other racially-motivated acts, and the director using a picture of a slave being whipped in a company presentation. The court found that these actions could not be extreme or outrageous: "even conduct sufficient to support a Title VII hostile work environment claim is found insufficient for a claim of outrageous conduct, absent repeated physical threats coupled with racially or sexually abusive language."[29] By contrast, in *Bernhard v. Doskocil Companies*[30], when the defendants made repeated racial slurs against the plaintiff, threatened to wrap a lacquer-soaked rag around the plaintiff's neck, and placed a welding tip in the plaintiff's chair which caused him severe injury when he sat down, the court found that those actions could be extreme and outrageous. Thus extreme and outrageous conduct is more than mere racist comments and harassment; it must cross the line into that which is truly shocking.

The allegations here fail to meet Kansas' strict standard for extreme and outrageous conduct. The racist remarks here were limited to Williams' hairstyle and were no more extreme than those in *Watson*. They were unaccompanied by physical threats; Cromwell's "I'm watching you" comment to Williams was at most a threat of work-related retaliation, and Williams does not allege she felt physically threatened. Cromwell's actions are not comparable to those in

---

[28] *Watson v. City of Topeka*, 241 F. Supp. 2d 1223, 1228-29 (D. Kan. 2002).

[29] *Id.* at 1238.

[30] *Bernhard v. Doskocil Cos.*, 861 F. Supp. 1006, 1015 (D. Kan. 1994).

*Bernhard*, where the threats and injury went beyond mere verbal abuse. Thus, even accepted as true, Williams' allegations cannot meet the extreme and outrageous element of intentional infliction of emotional distress.

Williams argues that, even if her complaint is insufficient, judgment on the pleadings is premature because she does not know yet what discovery will reveal. This argument is plainly contrary to the law and the purpose of judgment on the pleadings. "The court does not 'weigh potential evidence that the parties will present at trial,' but assesses whether the complaint 'alone is legally sufficient to create a claim for which relief may be granted.'"[31] Williams cannot rest on discovery to correct deficiencies in her pleading.

### IV.     Conclusion

Aeroflex is entitled to dismissal on Counts 6, 7, and 8 of Williams' complaint because Kansas law does not allow recovery for negligent retention, supervision, or training when an employee makes the complaint. Cromwell is entitled to dismissal on Count 4 because the allegations in the pleadings, accepted as true, do not plausibly indicate that her actions were extreme and outrageous.

**IT IS THEREFORE ORDERED** that Defendants' Partial Motion for Judgment on the Pleadings (Doc. 17) is hereby **GRANTED.**

---

[31] *Toney v. Harrod*, 2019 U.S. Dist. LEXIS 21580, at *8 (D. Kan. Feb. 11, 2019) (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)).

**IT IS SO ORDERED.**

Dated this 4th day of June, 2019.

*Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE