# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LINDA WILLIAMS,

        *Plaintiff,*

vs.

        Case No. 18-1252-EFM

AEROFLEX WICHITA, INC. and LORI
CROMWELL,

        *Defendants.*

## MEMORANDUM AND ORDER

Before the Court is Defendants Aeroflex Wichita, Inc. and Lori Cromwell's Motion for Summary Judgment (Doc. 69). Plaintiff Linda Williams alleges various violations of Title VII of the Civil Rights Act of 1964,[1] as well as intentional infliction of emotional distress under Kansas law. For the following reasons, the Court grants Defendants' motion for summary judgment.

## I.      Factual and Procedural Background[2]

Williams has worked at Aeroflex in Wichita since 1999 as a Customer Service Support Representative. Cromwell was Williams' supervisor from 2000 to 2017. Williams alleges that

---

[1] 42 U.S.C. § 2000e, *et seq.*

[2] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts in the light most favorable to the non-moving party.

during that time, Cromwell created a hostile work environment and discriminated and retaliated against her based on her race.[3]  Williams also alleges that Cromwell's actions negligently inflicted emotional distress, causing her to experience depression and fluctuating body weight.

## A.   Defendants' Actions

Cromwell issued Williams multiple disciplinary actions over the course of their 17-year working relationship.  From 2000 to 2003, Williams received several disciplinary actions for attendance violations and a few for personal conduct.  Cromwell issued no disciplinary actions to Williams from 2004 to 2011.  Between 2011 and the end of 2012, Cromwell issued two disciplinary actions for Williams' attendance and three for the quality of her work.  From 2012 to 2016, Cromwell issued Williams no disciplinary actions.  Finally, in September 2016, Cromwell issued Williams a disciplinary action for abusing her break time.

Williams alleges that Cromwell exhibited various actions over the course of their 17-year working relationship indicative of her discrimination and harassment.[4]  For example, Cromwell was slow to reply to Williams' emails.  She would tell Williams to stop humming while at other times permitting Williams' coworkers to whistle.  Cromwell made rude comments to Williams several times.  She once told Williams "this is the first time you made sense" and then laughed at her.  On other occasions, Cromwell asked about Williams' wig and commented on the smell of her hair.  Cromwell asked Williams to stop entering the office through a specific door but then used the door herself.  At one point, Cromwell approached Williams' desk and said, "I'm watching you."  At another time, Cromwell threw some of Williams' papers to the floor.  Williams did not

---

[3] Williams is African-American.

[4] Williams' allegations are only thinly supported by the record.  She gives wide time ranges and is unable to pinpoint dates where Cromwell specifically acted rudely or in a discriminatory manner.  However, the Court sets forth the following paragraph in the light most favorable to Williams.

report those specific actions and comments to human resources ("HR"), but rather reported that Cromwell was generally rude to her and micromanaged her work.

Unrelated to her allegations of Cromwell's behavior, Williams' alleges that Aeroflex discriminated against her by denying her tuition reimbursement.  Aeroflex had a tuition reimbursement policy to encourage employees to take continuing education classes to develop skills within the scope of the employee's job duties.  Aeroflex rejected Williams' request for tuition reimbursement for sociology and English courses, stating that neither course had a direct impact on Williams' job duties.  On another occasion, however, Aeroflex granted a black employee's tuition reimbursement request for a course in line with the employee's job duties.

**B.      Williams' Complaints**

In 2003, Williams complained to Marjie Hale—Aeroflex's Director of HR at the time—about Cromwell's behavior.  Williams testified that when speaking to Hale, she did not "jump on it and say, oh [Cromwell]'s a racist."[5]   Correspondingly, Hale's notes reflect that "Linda commented that she did not believe that Lori is discriminating against her."[6]   At the time of her meeting with Hale, Williams did not indicate that she believed Cromwell's actions were motivated by racial animus.  Hale investigated the complaint, meeting with Cromwell's supervisors and interviewing Williams' coworkers.  The investigation concluded without any indication that Cromwell's harsh behavior was targeted towards racial minorities.

In 2012, Williams again complained to HR about Cromwell, alleging that Cromwell did not like her and that she inconsistently applied company policies to Williams' detriment.  She

---

[5] Williams Dep. (Pl.'s Ex. K), Doc. 85-12, at 11.

[6] Hale Notes (Defs.' Ex. 7), Doc. 72-12, at 3.

made no mention that she believed those actions were based on racial animus.  In response, Connie Tindal—an HR manager—attempted to set up a meeting with Williams and Cromwell to address the tension.  Williams failed to follow up on her complaint and a meeting was not set up.  However, later in 2012, Aeroflex investigated another complaint from Williams regarding Cromwell's disciplinary write-ups.  After consulting an expert within the company who possessed knowledge of the appropriate performance metrics for Williams' position, Aeroflex concluded that Cromwell had reasonable grounds to discipline Williams for various reporting errors.

On October 6, 2016, Williams emailed Martin Burgess—Executive Vice President of HR and Communications—to complain about Cromwell's behavior, specifically alleging that she was "harassed, belittled, humiliated on more than one occasion" as well as describing it as an "abusive relationship."[7]  Williams titled the email "My Cry for Help."[8]  Williams did not mention race or racial discrimination in this email.  Williams noted that she sent the email because she finally reached a tipping point as a result of Cromwell's September 2016 disciplinary action resulting from Williams' alleged violations of Aeroflex's break policy.  Burgess opened an investigation which resulted in HR interviewing Williams multiple times about Cromwell's behavior.  During those interviews, Williams continued to allege that Cromwell harassed her, but she never alleged it was based on her race or that she suffered racial discrimination.  After the investigation, HR concluded that Cromwell's managerial behavior—which was admittedly harsh and at times rude— did not vary amongst her subordinates.  In response to Williams' complaint, Aeroflex coached and

---

[7] Williams' Oct. 6, 2016 Compl. (Defs.' Ex. 3-E), Doc. 72-7, at 6.

[8] Doc. 72-7, at 6.

counseled Cromwell about her management and communication style.  Aeroflex concluded that Cromwell treated everyone the same, albeit harshly.

Cromwell's department experienced significant turnover during the 17-year period she supervised Williams.  Several of Williams' former coworkers indicated in exit interviews that they disliked Cromwell's harsh management style.  Those former coworkers were both white and black. None of them indicated that they felt discriminated against by Cromwell.  Aside from the following two, none of them indicated or testified that Cromwell exhibited racial prejudice towards Williams.

Two of Williams' former coworkers—Erin Craig and Emily Trimpe—testified that they felt Cromwell was "prejudiced."[9]  However, they could not identify specific events to support their perception.  Notably, Craig stated "I don't have evidence" before listing general, intangible changes in Cromwell's attitude—such as her tone of voice—when Williams was present.[10] Likewise, Trimpe cited only "nonverbal cues," admitting that she "wish[ed she] could come up with something more specific."[11]

After Williams' multiple complaints, in 2017 Aeroflex offered to transfer Williams' to a different department or supervisor.  Williams chose to remain in the customer service department but accepted the transfer to another supervisor.  This was not a demotion and the general nature of Williams' job duties remained the same.  She did not lose any of her benefits, nor was her salary lowered.

---

[9] Craig Dep. (Pl.'s Ex. G), Doc. 85-8, at 10.

[10] *Id*.

[11] Trimpe Dep. (Pl.'s Ex. I), Doc. 85-10, at 13, 19.

**C.**     **Procedural History**

Williams filed a complaint to the Kansas Human Rights Commission ("KHRC") on October 29, 2016.[12] She concedes that she did not suffer any retaliation from filing this complaint, rather contending that she suffered retaliation for her October 6, 2016, email to Burgess.  In her KHRC complaint, Williams alleged the following three factual bases:

> A.     From August 2016 to October 26, 2016, my work was more closely scrutinized than other similarly situated employees and I was subjected to written and verbal harassment.  During this same timeframe, I made multiple complaints to Human Resources and to Respondent's Corporate office.
>
> B.     In September 2016, I was treated less favorably than other similarly situated employees.
>
> C.     On September 20, 2016, I was given a written reprimand.  On this same date, I complained about the reprimand to Human Resources.[13]

She did not mention Cromwell by name and besides checking the appropriate boxes, cited no specific instances of racial discrimination or retaliation.  She mentioned no incidents before August 2016.  The EEOC issued a notice of dismissal and right-to-sue letter on June 20, 2018.

Williams brought this action on September 7, 2018.  The Court granted Defendants' partial motion for judgment on the pleadings, eliminating four of Williams' original claims.[14]  Williams proceeds with her four remaining claims: Title VII hostile work environment, discrimination, and retaliation, as well as negligent infliction of emotional distress.

---

[12] This complaint was dually filed with the Equal Employment Opportunity Commission ("EEOC").

[13] Kansas Human Rights Comm'n Compl. (Defs.' Ex. 9), Doc. 70-18, at 1–2.

[14] The Court dismissed claims against Aeroflex for negligent retention/hiring, training, and supervision, and against Cromwell for intentional infliction of emotional distress.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[15] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[16]  The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[17]  The nonmovant must then bring forth specific facts showing a genuine issue for trial.[18] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[19]  The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[20]

## III.     Analysis

Williams claims that Defendants' violated Title VII by creating a hostile work environment and by discriminating and retaliating against her based on her race.  Williams further asserts a negligent infliction of emotional distress claim against Cromwell.  Defendants move for summary judgment on all four of Williams' claims.  After first addressing Defendants' affirmative defense

---

[15] Fed. R. Civ. P. 56(a).

[16] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[17] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[18] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

[19] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[20] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

of failure to exhaust administrative remedies, the Court will separately address each of Williams' claims.

## A.      Failure to Exhaust Administrative Remedies

Employees alleging Title VII discrimination or retaliation must comply with specific administrative complaint procedures to exhaust their administrative remedies.[21]  In Kansas, this means that employees must first file complaints with either the EEOC or the KHRC before bringing suit in court.[22]  "This regulatory exhaustion requirement is not a jurisdictional prerequisite for suit but is a claims-processing rule that the employer may raise as an affirmative defense."[23] "Because it is a *mandatory* rule, however, the court must enforce this exhaustion requirement if the employer properly raises it."[24]  In this case, Defendants properly raised the affirmative defense.

The twofold purpose of requiring aggrieved parties to file administrative charges is to give employers notice of the "claims being brought against them" and to give "the EEOC with an opportunity to conciliate the claims."[25]  Therefore, "the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim."[26]  Courts must then determine "whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made."[27]  Thus, the administrative

---

[21] *See Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020).

[22] *Azzun v. Kansas Dep't of Health & Env't*, 2011 WL 903901, at *3 (D. Kan. 2011).

[23] *See Hickey*, 969 F.3d at 1118.

[24] *See Id*. (emphasis added).

[25] *Dunmars v. Ford Cty., Kan. Bd. of Comm'rs*, 2019 WL 3817958, at *3 (D. Kan. 2019).

[26] *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

[27] *Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quotation, citation, and alteration omitted).

complaint must include "[e]ach discrete instance of discriminatory treatment."[28]   The court liberally construes administrative complaints in the interest of justice.[29]

In this case, Williams limited her KHRC complaint to actions *after* August 2016.  Her three factual allegations only encompass August to October 2016.  Williams did not have to provide extensive detail about the discrete incidents, but at a minimum she must have identified them.  She failed to do so.  It is unreasonable to assume that Aeroflex was put on notice for claims outside of Williams' alleged dates; it is certainly unreasonable to expect them to anticipate Williams' claims stretching back to 2000, 2003, or 2012.   Therefore, since Williams failed to exhaust her administrative remedies, the Court will not consider allegations of discriminatory or retaliatory conduct occurring before August 2016.[30]

## B.    Title VII Hostile Work Environment

Under Title VII, it is unlawful for an employer:

> [T]o discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . or [ ] to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.[31]

"Although Title VII does not explicitly mention hostile work environment, a victim of a racially hostile work environment may nevertheless bring a cause of action under Title VII."[32]

---

[28] *Dunmars*, 2019 WL 3817958, at *3.

[29] *Id.*

[30] Although not impacting the Court's reasoning here, Title VII also requires employees to bring administrative complaints within 300 days of the alleged incident of discrimination or retaliation. 42 U.S.C. § 2000e-5(e).

[31] 42 U.S.C. § 2000e-2.

[32] *Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000) (citations omitted).

###### 1.      There is Insufficient Evidence of Pervasive or Severe Conduct

To survive a summary judgment motion on a hostile work environment claim, "a plaintiff must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[33]   "Severity and pervasiveness are evaluated according to the totality of the circumstances."[34]   Furthermore, the evidence must demonstrate that Plaintiff was targeted because of her race.[35]   The Court must view the environment both objectively and subjectively.[36]   "[A]bsent evidence that *because of her race* Plaintiff . . . was subjected to a hostile work environment, evidence of general mistreatment of an employee does not present an actionable claim under Title VII."[37]   "Facially neutral abusive conduct can support a finding of [racial] animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly [racially]-discriminatory conduct."[38]

The Court concludes that the record contains insufficient evidence that Aeroflex's workplace was permeated with racial animus "severe or pervasive" enough to "alter the conditions of [Williams'] employment and create an abusive working environment."[39]   Williams points to no specific action that directly reveals racial animus.   Rather, Williams subjectively interprets

---

[33] *Sandoval v. City of Boulder*, 388 F.3d 1312, 1327 (10th Cir. 2004) (citation omitted).

[34] *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (citations omitted).

[35] *Sandoval*, 388 F.3d at 1327.

[36] *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th Cir. 2012)

[37] *Palmer v. Kaiser Found. Hosps. Tech. Risk Off.*, 753 F. App'x 590, 594 (10th Cir. 2018).

[38] *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 960 (10th Cir. 2012) (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999)) (some alterations omitted).

[39] *Sandoval*, 388 F.3d at 1327 (citation omitted).

Cromwell's harsh—and sometimes rude—managerial style as being motivated by Williams' race. Cromwell frequently pointed out Williams' mistakes, reprimanded her for violating the dress code, commented on the smell of her hair, and made other rude statements.  One time, Cromwell compared Williams' appearance to Richard Simmons—a white man.  Notably, however, numerous Aeroflex employees testified to Cromwell's universal reputation for being harsh *regardless* of the race of her subordinates.  Cromwell treated racial minorities equally as bad as she treated whites. Without further evidence of specific racial animus against Williams or other racial minorities, the Court can only regard Cromwell's race-neutral actions as poor managerial tactics.

Williams' cites two of her past co-workers who testified that, in their opinion, Cromwell's actions toward Williams were motivated by race.  But those witnesses did not testify as to any words—written or spoken—or any actions on Cromwell's part that objectively indicate she targeted Williams because of her race.  Absent an objective factual basis, the Court need not credit witnesses' subjective conclusions.[40]  As such, the Court concludes that Williams has failed to establish that Defendants created a hostile work environment.

### 2.    *Aeroflex Lacked Notice of Discrimination and Nevertheless Responded Reasonably*

Even if Williams could establish a hostile work environment, her *claim* still fails.  "To survive summary judgment under Title VII, the record must support an inference of a racially hostile work environment *and* a basis for employer liability."[41]  "[E]mployers are not automatically liable under Title VII for the conduct of employees that creates a hostile work environment."[42]

---

[40] *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1408–09, n.7 (10th Cir. 1997) (citing *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1491 (10th Cir. 1995)).

[41] *Ford*, 222 F.3d at 775 (citation omitted).

[42] *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1139 (10th Cir. 2008).

Employers, however, can be found liable under a negligence theory, which means that "the employer fails to remedy a hostile work environment it knew or should have known about."[43]

There are two steps to consider when assessing negligence and a defendant's response to the harassment.[44]  The first step requires an inquiry into the defendant's actual or constructive notice of the discrimination.[45]  The parties disagree about Aeroflex's notice.  Williams argues that her October 2016 email to Burgess constituted actual notice of Cromwell's discrimination. Defendants' counter that Williams' email lacked any indication of Title VII violations, only generally alleging that Cromwell's behavior was rude and harsh.  Williams also points to her other HR complaints from 2003 and 2012, alleging that those complaints put Aeroflex on either actual or constructive notice of Cromwell's discrimination.  But once again the record merely reflects that Aeroflex was aware of Cromwell's harsh management style, not any allegations of racial discrimination, retaliation, or prejudice.  There is nothing in the record to support Williams' allegations of Aeroflex's actual or constructive notice of discrimination.  As such, the Court concludes that the first step in assessing the basis for Aeroflex's liability for the hostile work environment claim is not met.

Similarly, the second step of the employer liability analysis is not met.  It requires the Court to consider the adequacy, or reasonableness, of the defendant's response to the racial hostility.[46] The test is "whether the [employer's] remedial and preventative action is reasonably calculated to

---

[43] *Id.* (citation omitted).

[44] *Id.* at 1147.

[45] *Id.*

[46] *Id.* at 1148.

end the harassment."[47]   "If the employer's response ends the harassment by the employee in question, we presume that the remedial action was sufficient."[48]  If the response is ineffective, the Court must "examine the timing of the employee's complaint, the speed of the employer's response, and the gravity of the punishment relative to the alleged harassment."[49]  In addition, if there is repeat conduct, the Court should consider whether the employer "progressively stiffens its discipline."[50]

Here, the Court concludes that Aeroflex's response to each of Williams' complaints was reasonable.  In the instances where Aeroflex lacked specificity as to Cromwell's behavior, it opened investigations and sought to interview related parties.  Williams failed to attend those interviews multiple times.  In other cases, Aeroflex met with Cromwell to discuss her managerial style and coached her on gentler communication techniques and active listening skills.  Aeroflex interviewed Williams' coworkers to corroborate her allegations, concluding that Cromwell treated everyone in a similarly harsh manner.  In particular, Burgess and Aeroflex's HR department responded reasonably to Williams' October 2016 email.  The record reflects that they conducted a thorough investigation and took Williams' allegations seriously.  As a result, they offered Williams multiple remedial options, and Williams ultimately decided to transfer to another supervisor within her same department.  As previously stated, Williams' complaints lacked sufficient allegations to put Aeroflex on notice of racial discrimination, but Aeroflex thoroughly investigated each

---

[47] *Id.* (citation omitted).

[48] *Duncan v. Manager, Dep't of Safety, City & Cty. of Denver*, 397 F.3d 1300, 1310 (10th Cir. 2005) (citation omitted).

[49] *Id.*

[50] *Adler*, 144 F.3d at 676.

complaint *within the scope* of the corresponding allegations.   Given the totality of the circumstances, Aeroflex's responses to Williams' complaints were adequate and reasonable.

The Court concludes that Williams has failed to carry her burden to prove that "a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[51]  Because Williams has failed to show that she was targeted based on her race, and because Aeroflex lacked notice of racial discrimination and otherwise responded reasonably, the Court grants Defendants' summary judgment on Williams' hostile work environment claim.

## C.     Title VII Race Discrimination

Williams has not presented direct evidence that Aeroflex discriminated against her based on her race.  When a plaintiff has no direct evidence of race discrimination, her claim is subject to the *McDonnell Douglas* burden-shifting analysis.[52]  As part of the *McDonnell Douglas* analysis, the plaintiff must first demonstrate a prima facie case of discrimination.[53]  Then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its decision.[54]  Finally, the burden shifts back to the plaintiff to demonstrate that the defendant's reason is pretextual.[55]

---

[51] *Sandoval*, 388 F.3d at 1327 (citation omitted).

[52] *Timmons v. AGC Flat Glass N. Am., Inc.*, 2015 WL 6511552, at *6 (D. Kan. 2015) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1972)).

[53] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802); s*ee also Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1103, n. 1 (10th Cir. 1998); *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1513 (10th Cir. 1997), *cert. denied*, 522 U.S. 1028 (1997).

[54] *Timmons*, 2015 WL 6511552, at *6 (citing *McDonnell Douglas*, 411 U.S. at 802).

[55] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

1.      *Prima Facie Case of Race Discrimination*

To establish a prima facie case of race discrimination, a plaintiff must show that (1) she belongs to a protected class, (2) she suffered an adverse employment action, and (3) the adverse employment action occurred under circumstances giving rise to an inference of discrimination.[56] Williams is African-American and the parties do not dispute that she belongs to a protected class. The Court will thus consider whether Williams has established the second and third elements of a prima facie case of discrimination.

An adverse employment action "must be materially adverse to the employee's job status."[57] Courts focus on the "'materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position' so as to 'screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining . . . about discrimination.'"[58] A written warning, or reprimand, is an adverse employment action "*only* if it effects a significant change in the plaintiff's employment status."[59] A significant change in employment status includes "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."[60] Inconveniences or annoyances that do not cause more than de minimis harm to a plaintiff's job status are not

---

[56] *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) (citation omitted).

[57] *Duncan*, 397 F.3d at 1314.

[58] *Boese v. Ft. Hays State Univ.*, 814 F. Supp. 2d 1138, 1145 (D. Kan. 2011), *aff'd* 462 Fed. App'x 797 (10th Cir. 2012) (citation omitted).

[59] *EEOC. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007) (citation omitted).

[60] *Piercy v. Maketa*, 480 F.3d 1192, 1203 (10th Cir. 2007) (citation omitted).

actionable adverse actions.[61]  Moreover, "increased tension and unpleasant relationships between employees are not considered actionable adverse actions."[62]

The Court concludes that Williams did not suffer an adverse employment action. Cromwell issued Williams multiple disciplinary actions over the course of their 17-year working relationship.  The record does not reflect that any of those actions were baseless; to be sure, on multiple occasions Aeroflex either reviewed the disciplinary actions or investigated Williams' complaints, concluding that Cromwell disciplined Williams per company policy and commensurate with Williams' performance.  During one investigation, Aeroflex hired a subject-matter expert to opine on Williams' performance.  The expert—and ultimately the investigation— concluded that Williams' job performance was below average, and that Cromwell's disciplinary action was therefore justified.

More importantly, however, is that none of Cromwell's disciplinary actions effected a significant change in Williams' employment.  Williams was not fired, demoted, or reassigned without her consent.  She did not lose benefits.  Williams argues that Cromwell's attitude and behavior embarrassed her, harmed her reputation, and caused her coworkers to view her less favorably.  But the law does not consider those effects significant to Williams' employment.  As a result, Williams has failed to carry her burden to demonstrate a prima facie case of race discrimination and the Court therefore grants Defendants' motion for summary judgment as to this claim.[63]

---

[61] *EEOC. v. C.R. Eng., Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011).

[62] *Henderson v. Int'l Union*, 263 F. Supp. 2d 1245, 1284 (D. Kan. 2003) (citations omitted).

[63] The Court considers Williams' allegation of Aeroflex denying her tuition reimbursement because of her race to be entirely without merit.  The record indicates no direct evidence of such discrimination.  Nor does it indicate disparate treatment; employees of all races could receive tuition reimbursement so long as the coursework related to

**D.      Title VII Retaliation**

Williams has not presented direct evidence that Aeroflex retaliated against her based on her engagement in activity protected by Title VII.  Just like race discrimination claims, absent direct evidence of retaliation, Title VII retaliation claims are analyzed under the *McDonnell Douglas* framework.[64]  The plaintiff must first demonstrate a prima facie case of retaliation.[65]  Then the burden shifts to the defendant to articulate a legitimate, nonretaliatory reason for its decision.[66]  Finally, the burden shifts back to the plaintiff to demonstrate that the defendant's reason is pretextual.[67]

*1.      Prima Facie Case of Race Retaliation*

To establish a prima facie case of race retaliation, the plaintiff must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between her protected activity and the adverse employment action.[68]

"Opposition to an employer's conduct is protected . . . only if it is opposition to a practice made an unlawful employment practice by [Title VII]."[69]  Importantly, "Title VII does not prohibit all distasteful practices by employers."[70]  An employer can be "unconscionably rude and unfair"

---

the employee's job duties.  The record reflects that Aeroflex approved white employees' reimbursement requests for coursework in business—directly related to the employees' job duties.  Williams' sociology and English courses, on the hand, did not relate to her job duties.  Without other evidence of discrimination, the Court cannot countenance this argument.

[64] *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014) (citations omitted).

[65] *Id.* (citing *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011)); s*ee also Roberts,* 149 F.3d at 1103, n. 1; *Thomas*, 111 F.3d at 1513.

[66] *Timmons*, 2015 WL 6511552, at *6 (citing *McDonnell Douglas*, 411 U.S. at 802).

[67] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 804).

[68] *Estate of Bassatt v. Sch. Dist. No. 1*, 775 F.3d 1233, 1238 (10th Cir. 2014) (citations omitted).

[69] *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002) (alteration in original).

[70] *Id.*

-17-

to an employee without violating Title VII.[71]  "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [Title VII]."[72]  Thus, an employee's complaints must refer to "race, religion, or national origin, or alleged discrimination or harassment on any unlawful basis."[73]

Williams argues that she engaged in protected activity by emailing Burgess in October 2016 about Cromwell's rude behavior.[74]  The Court disagrees.  Although Williams used the word "harassed," she did not mention race or racial discrimination in the email, nor did she mention any other practice made unlawful by Title VII.  Rather, her complaint reveals that she felt aggrieved by Cromwell's rude behavior, harsh management style, and repeated disciplinary actions.  In the ensuing investigation, Williams did not mention race or racial discrimination to anyone in HR.  Therefore, since Williams did not engage in a protected activity, none of Aeroflex's subsequent actions could be considered retaliatory.

However, even if the Court were to agree that Williams engaged in protected activity, she nevertheless fails to carry her burden to show that she suffered an adverse employment action.  Similar to the Court's analysis under Williams' race discrimination claim, Williams fails to show that any of Defendants' actions rise to the level required by law.  By definition, only Defendants'

---

[71] *Id.*

[72] *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) (quotation omitted).

[73] *Faragalla v. Douglas Cty. Sch. Dist. RE 1*, 411 F. App'x 140, 148 (10th Cir. 2011) (citing *Petersen*, 301 F.3d at 1188).

[74] As stated above, the Court will not consider Williams' HR complaints for retaliation due to her failure to exhaust administrative remedies and the otherwise untimely nature of the KHRC filing.  Regardless, none of those complaints included references to "harassment" like Williams' October 2016 email did, let alone allegations of racial discrimination or prejudice.

actions after Williams' October 6, 2016 email could be considered retaliatory.  Williams alleges that after that date, Cromwell corrected some of Williams' errors, commented that her attire violated the company's dress code, and commented on the smell of her hair.  While brusque or rude, those actions do not rise to the level of adverse employment action under Title VII.  To reiterate, Williams was not demoted or fired, and her pay and benefits were not altered.  After the investigation, Aeroflex offered to change Williams' department or supervisor, but it did not mandate this change.  Williams' accepted the offer to transfer supervisors.  Overall, none of those events constitute adverse employment actions under Title VII.

The Court concludes that Williams has failed to carry her burden to establish a prima facie case of race retaliation.  She cannot show that she engaged in a protected activity or that she suffered an adverse employment action.  Therefore, the Court grants Defendants' motion for summary judgment on this claim.

**E.     Negligent Infliction of Emotional Distress**

In addition to her Title VII claims, Williams brings a negligent infliction of emotional distress claim against Cromwell.  In Kansas, "[t]o succeed on a claim for negligent infliction of emotional distress, a plaintiff must first establish that he or she has a qualifying physical injury under Kansas law."[75] Additionally, "the qualifying physical injury must (1) directly result from the emotional distress allegedly caused by the defendant's negligence and (2) appear within a short span of time after the emotional disturbance."[76]  "Kansas courts have addressed various types of

---

[75] *Ware ex rel. Ware v. ANW Special Educ. Co-op. No. 603*, 39 Kan. App. 2d 397, 180 P.3d 610, 613 (2008) (citations omitted).

[76] *Id.*

symptoms when determining whether they may be characterized as physical injuries for purposes of negligent infliction of emotional distress claims."[77]

The record contains insufficient evidence for a jury to reasonably conclude that Williams suffered a qualifying physical injury.  Williams alleges that she suffered depression and weight fluctuations as a result of Cromwell's actions.  She alleges no other physical injuries stemming from Cromwell's actions.  Those symptoms do not meet the threshold for a qualifying physical injury under Kansas law.[78]  As such, the Court grants summary judgment on this claim.

## IV.     Conclusion

The Court concludes that Williams' Title VII hostile work environment claim fails because she has failed to show that she was targeted based on her race, and because Aeroflex lacked notice of racial discrimination and otherwise responded reasonably.  Furthermore, Williams has failed to establish prima facie cases for her Title VII race discrimination and retaliation claims.  Lastly, Williams' negligent infliction of emotional distress claim fails because the record does not reflect that she suffered a qualifying physical injury under Kansas law.

**IT IS THEREFORE ORDERED** that Defendants Aeroflex Wichita, Inc. and Lori Cromwell's Motion for Summary Judgment (Doc. 69) is **GRANTED.**

---

[77] *Id*. at 613–14 (citing *Anderson v. Scheffler*, 242 Kan. 857, 752 P.2d 667, 669 (1988) (holding shock, emotional pain, nightmares, and depression are not compensable physical injuries when there is no actual physical injury); *Hopkins v. State*, 237 Kan. 601, 702 P.2d 311, 319–20 (1985) (holding weight gain is not a compensable physical injury)).

[78] *See Anderson*, 752 P.2d at 669; *see also Hopkins*, 702 P.2d at 319–20.

**IT IS SO ORDERED.**

Dated this 15th day of October, 2020.

This case is closed.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE